UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20201-CR-MORENO/SIMONTON

**UNITED STATES OF AMERICA**,

    Plaintiff,
vs.

**BEATRIZ MACHADO**,

    Defendant.

_____/

## MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS
## AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, BEATRIZ MACHADO, through undersigned counsel and moves this Honorable Court to enter an Order suppressing all physical evidence seized from this Defendant's vehicle and from any baggage or containers situated therein, her purse as well as all statements made by her while in police custody or upon questioning by law enforcement agents, and for grounds would state that:

## GROUNDS

1. The arrest of BEATRIZ MACHADO lacked probable cause and was otherwise unreasonable thereby violating the Fourth Amendment to the United States Constitution.

The warrantless search of BEATRIZ MACHADO's vehicle and purse lacked probable cause and/or exigent circumstances and were otherwise unreasonable thereby violating the Fourth Amendment to the United States Constitution.

3. Any purported consent given by Ms. Machado to search her purse and/or any items contained in her vehicle were involuntary, the product of illegal police action and in violation of the Fourth and Fifth Amendments to the United States Constitution.

4. Any and all statements allegedly made by this Defendant, including those made as a consequence of her purported waiver of her *Miranda* rights were coerced and involuntary as the fruit of an illegal search in violation of the Fifth Amendment to the United States Constitution.

## ITEMS TO BE SUPPRESSED

Any and all items seized by law enforcement from the Defendant's vehicle including any bags or containers as well as her purse, specifically, but not limited to, any and all illegal narcotics (marijuana, methamphetamine, GHB), drug paraphernalia, miscellaneous documentation and statements made by Ms. Machado to law enforcement personnel.

## SUMMARY OF FACTS

On February 27, 2007, law enforcement officers purportedly conducted a surveillance of an individual named Zachary Taylor for suspected illegal narcotics activity based upon information they claim was provided by confidential sources. During the course of their surveillance, agents supposedly observed this Defendant, BEATRIZ MACHADO, enter and drive off with codefendant Taylor in a [rented] Jeep Compass[1] and travel from Miami Beach to Coconut Grove. Thereupon, agents contend that they watched as Ms. Machado and Mr. Taylor parked said vehicle in the Mayfair Hotel parking garage, exit the car and leave the premises.[2] Agents further allege that they continued their surveillance of the Jeep for approximately four **(4)** hours. They eventually decide to conduct a K-9 sniff of the vehicle and claim that the dog gave a positive alert to the rear of the vehicle. Surveillance was then maintained for another six **(6)** hours through 6:00 a.m. the following morning (February 28th), when the agents decided to terminate same. Before leaving the parking garage, the agents placed a GPS tracking device on the Jeep. Surveillance was eventually re-established at 1:30 p.m., approximately seven and one

---

[1] Agents had previously discovered that the Jeep was registered to Dollar Thrifty Automotive Group ("Dollar"). Further investigation revealed that the vehicle was rented by Ms. Machado from February 19 – 26 and was one (1) day overdue according to the terms of the rental agreement. Dollar never took any steps to legally recover said vehicle. In actuality, Ms. Machado called the rental agency around 4:00 p.m. on February 27th requesting to extend the lease on the vehicle.

[2] The Mayfair garage is an enclosed indoor parking facility with entry and exit gates and is a privately owned establishment.

half **(7½)** hours later.[3]  Agents then claim that they secured the vehicle, contacted the rental car company and a representative of the company came to the vehicle's location at the direction of law enforcement and provided entry to the Jeep.  A subsequent search of the Jeep Compass and the containers therein revealed the presence of several types of suspect narcotics and drug paraphernalia which form the basis of the charges set forth in the subject Indictment.  Agents later searched Ms. Machado's purse and found a small amount of methamphetamine.  Two days later, Ms. Machado was arrested for the instant charges.

## ARGUMENT

A. *The Constitutional Protections of the Fourth Amendment*

The Fourth Amendment of the United States Constitution provides that:

> The right of a person to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Protection under the Fourth Amendment is inherent where there has been a show of official authority from which a reasonable person would conclude that he or she is not free to end a police encounter and depart.  In *United States v. Mendenhall*, 446 U.S. 544, 554, it was concluded that

> "'..........a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  Examples of circumstances that would indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice

---

[3] It is important to note that approximately eighteen (18) hours transpired between the time agents first observe Ms. Machado park the Jeep in the Mayfair garage and the time they eventually secure and enter the vehicle to conduct their search.  In fact, thirteen and one half (13 1/2) hour pass from the time of the dog alert to the entry and search.

3

indicating that compliance with the officer's request might be compelled"'
*Id*. at 554

### B. *Expectation of Privacy in [Overdue] Rental Vehicle*

Under normal circumstances, a lessee of a rental vehicle has a legitimate expectation of privacy in his/her leased vehicle and is not subject to invasion by the lessor and/or its agents absent legally permissible conditions. For example, and as the Government contends occurred in this case, where a lessee has retained possession of a leased vehicle after the rental period had expired without the express consent of the lessor. Such a circumstance may give rise to the lessor's right to recover the vehicle, however, in order for the leasing company ("Dollar" herein) to initiate recovery of the overdue vehicle in the State of Florida, they must first comply with the requirements set forth in Florida Statute §812.155[4] or institute a civil replevin action. There is

---

[4] **§812.155 (3) FAILURE TO REDELIVER HIRED OR LEASED PERSONAL PROPERTY**.--Whoever, after hiring or leasing any personal property or equipment under an agreement to redeliver the same to the person letting such personal property or equipment or his or her agent at the termination of the period for which it was let, shall, without the consent of such person or persons knowingly abandon or refuse to redeliver the personal property or equipment as agreed, shall, upon conviction, be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083, unless the value of the personal property or equipment is of a value of $300 or more; in that event the violation constitutes a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(4) **EVIDENCE**.--

(a) In prosecutions under this section, obtaining the property or equipment under false pretenses; absconding without payment; or removing or attempting to remove the property or equipment from the county without the express written consent of the lessor, is evidence of fraudulent intent.

(b) In a prosecution under subsection (3), failure to redeliver the property or equipment within 5 days after receipt of, or within 5 days after return receipt from, the certified mailing of the demand for return is evidence of abandonment or refusal to redeliver the property. Notice mailed by certified mail, return receipt requested, to the address given by the renter at the time of rental shall be deemed sufficient and equivalent to notice having been received by the renter, should the notice be returned undelivered.

(c) In a prosecution under subsection (3), failure to pay any amount due which is incurred as the result of the failure to redeliver property after the rental period expires, and after the demand for return is made, is evidence of abandonment or refusal to redeliver the property. Amounts due include unpaid rental for the time period during which the property or equipment was not returned and include the lesser of the cost of repairing or replacing the property or equipment if it has been damaged.

(5) **DEMAND FOR RETURN**.--Demand for return of overdue property or equipment and for payment of amounts due may be made in person, by hand delivery, or by certified mail, return receipt requested, addressed to the lessee's address shown in the rental contract.

4

no evidence that Dollar initiated any such measures in order to seek recovery of Ms. Machado's vehicle. Moreover, Ms. Machado had called the company seeking to extend her lease on the afternoon of the 27th prior to the alleged search. In addition, Dollar had her credit card on file, and did, in fact, bill her credit card for the original contractual time period as well as the additional week thereafter, including the time said vehicle was in police care, custody and control. This bill was paid by Ms. Machado in its entirety. Furthermore, the police and the rental company knew that the vehicle was not reported stolen, was not stolen and was still in the care, custody and control of the original renter, Ms. Machado.

A similar situation occurred in *United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1998). In *Cooper*, the Court held that the defendant had a reasonable expectation of privacy in a rental car even though it was four (4) days overdue, and that the defendant had Fourth Amendment standing to challenge a warrantless search conducted of the vehicle. The Court further reasoned that since the defendant had paid his bill in full, the rental company had not taken any steps to repossess the car and the fact that the defendant could have easily extended the term of the lease by a simple phone call all contributed to their logical conclusion.

B.  *Validity of Vehicle Search*

It is well settled that in order for a law enforcement officer to conduct a warrantless search of a motor vehicle, it must be predicated upon probable cause, **and** exigent circumstances must exist. Absent such conditions, law enforcement must first secure a warrant in order to perform the desired search. There is a long established "automobile exception" to the warrant requirement where exigency is premised upon an automobile's mobility and the likelihood that

---

(6) **NOTICE REQUIRED**.--As a prerequisite to prosecution under this section, the following statement must be contained in the agreement under which the owner or person lawfully possessing the property or equipment has relinquished its custody, or in an addendum to that agreement, and the statement must be initialed by the person hiring or leasing the rental property or equipment:

Failure to return rental property or equipment upon expiration of the rental period **and** failure to pay all amounts due (including costs for damage to the property or equipment) are evidence of abandonment or refusal to redeliver the property, punishable in accordance with section 812.155, Florida Statutes. (emphasis added)

the evidence will be lost or destroyed if not immediately seized.  See:  *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and its progeny.  What distinguishes the instant case from your typical roadside stop/encounters is that the vehicle at issue herein was legally parked and locked in a privately owned and operated enclosed indoor garage facility.  Moreover, the garage securely monitors its entry and exit gates.  In other words, the vehicle under surveillance was in an extremely controlled, confined environment with very limited mobility and isolated egress access to outside roadways.

Assuming arguendo that the agents had probable cause to search Ms. Machado's vehicle, we must then focus on what, if any exigent circumstances existed which would legally justify a warrantless search.   Clearly, and based upon the fact that the [locked]car was unoccupied and under constant surveillance by multiple law enforcement agents for approximately ten **(10)** hours, was completely <u>confined</u> within a securely monitored indoor parking garage, the likelihood of it being readily mobile and leaving the premises with suspected contraband was non-existent.  Moreover, when law enforcement decide to placed a GPS device on said vehicle and abandoned their surveillance for some seven and one half **(7 ½)** hours, there actions spoke volumes as to the lack of exigency (no genuine fear of loss or destruction of evidence), justifying a forcible entry into the vehicle.  Certainly, the agents had ample time to secure, at the very least, a telephone warrant during the thirteen and one half **(13 ½)** hour period between the dog alert and their eventual unlawful entry into the vehicle.   The agents can not then create their own exigency.  Time was undoubtedly not of the essence under these circumstances.[5]  Especially where the suspects [Machado and Taylor] had previously exited the premises hours earlier and had not returned.  In the event that the suspects did, in fact, reappear to recover the vehicle, their access

---

[5] Once the agents chose to abandon their surveillance and leave the premises, it is certainly conceivable that the suspected contraband they believed was located within the vehicle could have been safely removed by the suspects and/or any other unknown individual(s).  This important factor can not, and should not be ignored when considering whether exigent circumstances sufficiently existed to justify the agent's ultimate entry into the subject vehicle.  At the very least, a single agent from their multi-task force could have been posted to retain the integrity of the surveillance site.

6

to the car could and would have been easily thwarted by the significant presence of law enforcement.

The eventual entry into Ms. Machado's vehicle can not be considered anything less then a forcible entry. The only reason that the Dollar representative appeared and opened the car for the agents was at their behest. The Dollar representative was not there to repossess or recover the vehicle, nor was Dollar legally entitled to do so as previously argued above.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court reiterated the basic principle that no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances. The Court further noted that even when the object is contraband, it [the Supreme Court] has repeatedly stated and enforced the basic rule that police may not enter and make a warrantless seizure. Like the case at bar, *Coolidge* dealt with a warrantless search of a defendant's parked and unoccupied automobile which the Court found to be unlawful. See also: *Chambers v.Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) which is addressed in part by *Coolidge*.

> "As we said in *Chambers*, *supra*, at 51, 90 S.Ct., at 1981, "exigent circumstances" justify the warrantless search of "an automobile *stopped on the highway,*" where the car is "movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." "[T]he opportunity to search is fleeting * * *." (Emphasis supplied.)  …….."The opportunity to search was hardly fleeting.")
>
> *Id.* at 460

In *U.S. v. Lasanta*, 978 F.2d 1300 (2nd Cir. 1992) the Court found that investigative agents had no realistic concern that the [parked] car in question might be removed and evidence destroyed prior to obtaining a warrant. Cardona, the owner of the vehicle in that case was not operating the car, nor even next to it. They went on to reason that:

> "even if the agents had been surprised by the presence of the limousine and even if they harbored probable cause to suspect it contained evidence of  narcotics-related activity, they still could

7

>have posted an agent to remain with the vehicle, and then secured a search warrant."

>*Id.* at 1306

There are a litany of cases that follow *Coolidge* and its exigency analysis. In fact, there are a number of distinguishable cases which militate in favor of a lawful search of a parked automobile. However, it is abundantly clear that an appropriate analysis must be grounded upon the totality of the circumstances and viewed on a case by case basis. The automobile exception is a narrow, situation-dependent exception which requires much more than the fact that an automobile is the object sought to be seized and searched. In the case at bar, it is evident that the unique multitude of factors enumerated herein demonstrates a lack of exigency to justify law enforcements unlawful entry and search of the vehicle and contents therein.

C.   *Statements Are Fruit of Unlawful Police Conduct*

Inasmuch as any statements made by Ms. Machado prior to her arrest were based upon illegal police activity, any such statements were the fruit of such misconduct and must therefore also be suppressed. *See:* Brown v. Illinois, 95 S.Ct. 2254, 422 U.S. 590 (1975) and Wong Sun v. United States, 371 U.S. 471 (1963).

D.   *Consent To Search Defendant's Purse*

When the validity of a search rests on consent, the government has the burden of proving not only that the necessary consent was obtained, but also that it was freely, intelligently and voluntarily given. This burden is not satisfied by showing mere submission or acquiescence to a claim of lawful authority. Florida v. Royer, 103 S.Ct. 1319, 1324 (1983); Loji Sale Inc. v. New York, 99 S.Ct. 2319, 2326 (1979); Bumper v. North Carolina, 88 S.Ct. 1788, 1791 (1986); Brown v. Illinois, 95 S.Ct. 2254 (1975); United States v. Griffith, 845 F. Supp. 105 (W.D.N.Y. 1994); United States v. Woods, 837 F. Supp. 525 (W.D.N.Y. 1993); United States v. Ramos, 753 F. Supp. 75 (W.D.N.Y. 1990.

Ms. Machado's alleged consent to search her purse and any other personal belongings were not of a knowing, intelligent and voluntary nature, but was the product of an illegal search and custodial detention. Therefore, and based upon the reasoning stated above regarding the Defendant's statements, her purported consent to search her personal property must also follow a similar fate.

## CONCLUSION

The founding fathers of our great nation who drafted the United States Constitution and more specifically, the Fourth Amendment thereto intended to limit unreasonable governmental intrusions and misconduct such as that which has occurred in this case. However, as tempting as it may be to fall prey to the inevitable conclusion that, although a large amount of illicit narcotics were, in fact, actually discovered in the Defendant's vehicle, albeit among codefendant Taylor's possessions, one can not lose sight of the basic principles for which this particular Amendment was grounded upon. The fact is that ***"the end should never justify the means"*** as appears to be the Government's strategy herein. The eventual discovery of narcotics by law enforcement as a result of unlawful police conduct can not, therefore, attenuate the tainted circumstances surrounding the Defendant's arrest. To do so would have a chilling effect on the unequivocal protections afforded every individual by the Fourth Amendment.

WHEREFORE, the Defendant, BEATRIZ MACHADO, respectfully request this Court enter an order suppressing all physical evidence seized from this Defendant's vehicle, her personal property as well as all statements made by Ms. Machado while in police detention/custody or upon questioning by law enforcement agents.

CASE NO. 07-20201-CR-MORENO

Respectfully submitted,

s/ Peter S. Heller_____
Peter S. Heller (Florida Bar No. 402222)
Pslm4@aol.com
LAW OFFICES OF PETER S. HELLER, P.A.
9155 South Dadeland Boulevard
Suite 1412
Miami, Florida 33156
Tel. (305) 284-8000
Fax: (305) 670-0088
Counsel for Defendant, Machado

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Peter S. Heller_____

**CASE NO. 07-20201-CR-MORENO**

## SERVICE LIST

UNITED STATES v. BEATRIZ MACHADO
Case No.  05-20201-CR-MORENO/SIMONTON
United States District Court, Southern District of Florida

Sean Paul Cronin
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
305-961-9302
530-7976 (fax)
sean.p.cronin@usdoj.gov
Attorney for USA
CM/ECF Filing

Vincent Peter Farina
Federal Public Defender's Office
150 W Flagler Street
Miami, FL 33130-1556
305-530-7000X141
536-4559 (fax)
vincent_farina@fd.org
Attorney for Taylor
CM/ECF Filing

Michael Gary Smith
Michael Gary Smith
110 SE 6th Street
Suite 1970
Fort Lauderdale, FL 33301
954-761-7201
764-2443 (fax)
smithlawdefend@aol.com
Attorney for Moon
CM/ECF Filing

11